IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TREO SALON, INC.,**<br><br>       **Plaintiff,**<br><br>v.<br><br>**WEST BEND MUTUAL INSURANCE COMPANY,**<br><br>**Defendant.** | Case No. 20-cv-1155-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendant West Bend Mutual Insurance Company ("West Bend"). For the reasons set forth below, the Court **DENIES** the Motion to Dismiss in its entirety.

## BACKGROUND

Plaintiff Treo Salon, Inc. ("Treo") is a hair salon that operates at 2117 South State Road 157 in Edwardsville, Illinois, which is located in Madison County, Illinois. Prior to March of 2020, Treo purchased a policy of insurance from West Bend, aka policy number A 696293 00. The policy included a Businessowners Special Property Coverage Form with the following endorsement for Communicable Disease Business Income and Extra Expense Coverage:

> "You may extend this insurance to apply to the actual loss of Business Income or Extra Expense that you sustain as a result of your "operations" being temporarily shut down or suspended as ordered by a local, state, or federal board of health or similar

> governmental board that has jurisdiction over your "operations." The shutdown or suspension must be due to an outbreak of "communicable disease" or a "water-borne pathogen" at the insured premises as described in the Declarations." (Doc. 19, p, 3).

The insurance provision provides coverage for losses suffered due to a "communicable disease" on "the insured's premises which prompts a governmental or other board of authority to shut down operations". Easy examples would be those provided by defense counsel during oral argument: salmonella at a restaurant or a meningitis outbreak at a school.

In late December 2019, a cluster of cases of 'viral pneumonia of unknown etiology' were identified in Wuhan, China.[1] On January 5, 2020, WHO shared information about this cluster of cases and advised member states to take precautions to reduce the risk of acute respiratory infections. On January 9, 2020, WHO advised that the outbreak was caused by a novel coronavirus. On February 11, 2020, WHO announced that the disease caused by the novel coronavirus would be named COVID-19. On March 7, 2020, when the number of confirmed COVID-19 cases globally surpassed 100,000, WHO issued a statement calling for action to stop, contain, control, delay and reduce the impact of the virus at every opportunity. On March 11, 2020, WHO made the assessment that COVID-19 could be characterized as a pandemic, which is defined as "occurring over a wide geographic area and typically affecting a significant portion of the population" and "characterized by very widespread growth or extent".[2]

---

[1] http/www.who.int/emergencies/diseases/novel-coronavirus-2019/interactive-timeline#event-2
[2] https://www.merriam-webster.com/dictionary/pandemic

The variations presented by COVID-19 are many, making it anything but routine. First, COVID-19 was believed to be highly contagious with a latency period of up to 14 days. Second, COVID-19 was spreading rapidly and diffusely. Third, it could be spread by infected individuals who were asymptomatic. Fourth, those who suffered the most severe symptoms of the illness were dying and/or requiring emergent, critical care. Because of this, the government had a reasonable belief that our health care facilities and health care responders would become overwhelmed by a rapid increase in infections such as occurred in Italy. Therefore, the government chose to preemptively and prophylactically order the closing of certain businesses promptly and not wait until they would inevitably become a vector of the virus. Plaintiff's business, a beauty salon, was identified as one of those classes of businesses that must be closed immediately.

No governmental agency, federal, state or local, had the tools and manpower to individually identify what particular business or building was a vector for the disease. Because of the nature of the disease and the latency period between infection and symptoms, ruling in or ruling out a certain business as a vector of COVID-19 was practically impossible. These facts dictated the aggressive, preemptive approach to stop the disease spread was sound public policy.

Protocols developed to slow the spread of disease included the wearing of masks and maintaining social distancing of six feet. Many businesses also erected plexiglass between its employees and its customers to prevent communication of the disease. However, the very nature of plaintiff's business rendered the primary

weapons used to stop the spread - masks, social distancing and ordering people exposed to or having had contracted the illness to quarantine - impracticable for those engaged in the business of providing grooming and hair care to individuals.

In accordance with the foregoing, Illinois Governor JB Pritzker issued a series of executive orders that resulted in the temporary shutdown of numerous "non-essential businesses" throughout Illinois. The novel coronavirus has undeniably wreaked havoc not only on the physical health of millions of Americans, but also on the economic health of the country and of businesses such as Treo.

## PROCEDURAL HISTORY

On October 2, 2020, Treo filed a Class Action Complaint in the Third Judicial Circuit of Illinois (Doc. 1-1). Within the complaint, Treo seeks a declaratory judgment that its losses are covered by the its policy with West Bend, specifically under the "Communicable Disease Business Income and Extra Expense Coverage" (Doc. 1-1, pp. 13-15). Treo also seeks an order certifying this as a class action[3]; however, it is premature to address that issue at this time, and for compensatory damages, costs of litigation and attorney's fees (*Id.,* pp. 15-16).

---

[3] Plaintiff brings this action on behalf of itself and the following classes of similarly situated Illinois businesses:

Class 1 – All Illinois businesses deemed non-essential by State of Illinois Executive Orders 2020-10. 2020-18, and 2020-32 that (a) had Communicable disease Business Income and Extra Expense coverage under an insurance policy issued by West Bend; (b) made a claim or attempted to make a claim under their insurance policy issued by west Bend; and (c) were actually or constructively denied coverage by West Bend despite their efforts to minimize the suspension of business caused by COVID-19 ("Communicable Disease Business Income and Extra Expense Breach Class"),

Class 2 – All Illinois businesses deemed non-essential by State of Illinois Executive Order 2020-10, 2018-10 and 2020-32 with Communicable Disease Business Income and Extra Expense Coverage under an insurance policy issued by West Bend ("Communicable Disease Business income and Extra Expense Declaratory Judgment Class").

On October 30, 2020, West Bend filed its timely notice of removal to this Court and attached a copy of the complaint filed in Madison County, Illinois as Exhibit 1 (Docs. 1, 1-1). Also attached were a complete copy of the applicable West Bend insurance policy, along with the gubernatorial/executive orders (Docs. 1-2 - 1-6).

On December 4, 2020, after obtaining an extension of time, West Bend filed a motion to dismiss for failure to state a claim, along with supporting memorandum of law (Docs. 17, 18). On January 4, 2021, Treo filed its response in opposition to the motion to dismiss (Doc. 19). On January 19, 2021, West Bend filed its reply to plaintiff's response (Doc. 20). On February 8, 2021, Treo filed a motion for hearing on the motion to dismiss (Doc. 21). On February 26, 2021, oral argument was conducted in this case remotely via Zoom (Doc. 25).

West Bend began their oral argument by reiterating many of the points in the motion to dismiss. West Bend asserted there were two prerequisites that must be satisfied for coverage to be triggered: (1) Communicable disease/outbreak at the insured's premises; and, (2) Business closed due to that outbreak (Doc. 17). West Bend stressed that COVID-19 was a global pandemic that was not particular to Treo's business and that Treo has not and cannot establish that any governmental order was "due to" any outbreak on their premises (*Id.*).

Treo countered that they paid for an endorsement for communicable disease coverage, which covered lost income due to outbreak of communicable disease that closed business due to an outbreak (Doc. 19). Treo claims to have met the triggers

set forth by West Bend and asserts their right to coverage under their policy (*Id.*). Specifically, Treo argues that there was a communicable disease/outbreak and that its business was shut down as a result of said outbreak (*Id*. at 5*)*. Finally, although Treo claims the insurance contract unambiguously provides coverage, it stresses that any ambiguity must be construed in favor of coverage (*Id*.).

On March 29, 2021, West Bend sought leave to file supplemental authority, which was granted (Docs. 26, 27). Treo followed with correspondence that distinguished the case provided by West Bend (Doc. 29). On April 15, 2021, West Bend again moved for leave to file supplemental authority, providing a recent decision out of the Western District of North Carolina (Doc. 30). This Court has reviewed all of the cases provided; however, notes that they are merely persuasive and not binding, as they have all been issued by courts of first impression.

## LEGAL STANDARDS

### I.  Federal Rule of Civil Procedure 12(b)(6)

In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "Plausibility is not a symptom for probability in this context but asks for more than a sheer possibility that a defendant has acted unlawfully." *West Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670 (7th Cir. 2016).

The Court of Appeals for the Seventh Circuit has clarified that courts must approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148 (2010) (*quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, a plaintiff who seeks to survive a motion to dismiss must "plead some facts that suggest a right of relief that is beyond speculative level." *In re marchFIRST Inc.*, 589 F.3d 901 (7th Cir. 2009).

Generally, district courts may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civile Procedure. *McCready v. eBay*, 453 F.3d 882, 891 (7th Cir. 2006). There is a narrow exception to this rule; however, that permits documents attached to the motion to dismiss to be considered part of the pleadings if they are referenced in the plaintiff's complaint and are central to the plaintiff's claim. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). In this case, Treo cited to the language of the endorsement for "Communicable Disease Business Income and Extra Expense Coverage (Doc. 1-1). West Bend provided a copy of Treo's insurance policy in its motion to dismiss, including the Communicable Disease endorsement; therefore, the policy can be considered in its entirety.

## II.   Insurance Contract Interpretation

Because this matter was removed based upon diversity of citizenship, the

substantive law of Illinois governs the insurance contract provisions. *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938). In insurance coverage disputes under Illinois law, underlying complaints and the insurance policy must be liberally construed in favor of the insured, which in this case is Treo. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.,* 578 N.E.2d 926 (Ill. 1991).

An insurance policy must be construed as a whole, giving effect to every provision. *Cent. Ill. Light Co. v. Home Ins. Co.,* 821 N.E.2d 206 (Ill. 2004). If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Id.* Ambiguous terms—that is, terms that are susceptible to more than one reasonable interpretation—must be construed in favor of coverage, *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). "[A] policy provision is not rendered ambiguous simply because the parties disagree as to its meaning," *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010).

## ISSUE BEFORE THE COURT

Does the simple and direct coverage formula advanced by defendant plausibly address and exclude coverage when government decides to order the closing of its insureds business preemptively due to its high likelihood of becoming a vector for COVID-19? Or, does the policy provide its insured coverage when government acts to shut down its business as a vector for communicable disease, before definitively establishing that the actual business, either through an employee, customer or its physical location, is a contaminated vector for communicating the disease on the

date of shutdown?

For the reasons set out hereafter, Treo Salon plausibly states a cause of action that it is entitled to coverage under this policy and specific circumstances surrounding COVID-19 and the government's response to it. The Motion to Dismiss is denied.

## ANALYSIS

The issue of insurance coverage cases related to the COVID-19 pandemic has been on the rise over the past few months, especially when dealing with "Business Income", "Business Interruption" and "Civil Authority" coverage to business shutdowns. Many of the decisions in this circuit have found no coverage for business closures resulting from civil authority closure orders. [4] See *Sandy Point Dental, P.C. v. Cincinnati Insurance Company*, 2020 WL 5630465 (N.D.Ill. Sept. 21, 2020); *The Bend Hotel Development Company, LLC v. The Cincinnati Insurance Company,* 2021 WL 271294 (N.D. Ill. January 27, 2021); *TJBC, Inc. v. The Cincinnati Insurance Company, Inc.*, 2021 WL 243583 (S.D. Ill. January 25, 2021); *T & E Chicago, LLC v. The Cincinnati Insurance Company*, 2020 WL 8513933 (November 19, 2020); *Derek Scott Williams v. The Cincinnati Insurance Co.,* 2021 WL 767617 (N.D. Ill. February 28, 2021). This Court has also reviewed the recent cases provided by both parties; but again, stresses that there is no binding precedent.[5]

---

[4] This list is not exhaustive or all-inclusive.
[5] See *Paradigm Care & Enrichment Center, LLC., et at. v. West Bend Mutual Insurance Company,* 20-cv-720 (W.D. WI. March 26, 2021 ) (Doc. 28); *Salon XL Color & Design Group, LLV. v. West Bend Mutual Insurance Company,* 2021 WL 391418 (E.D. Mich. Feb. 4, 2021) (Doc. 29); *Blue Coral, LLC.*

In this case, Treo seeks coverage under the endorsement for "Communicable Disease Business Income and Extra Expense Coverage", which specifically provides coverage for loss of business income resulting from communicable diseases (Doc. 1-1). This case deals with a specific and finite policy endorsement, not a traditional business interruption provision. At first blush, one presumes coverage exists based only upon the endorsement title; however, upon reading, it is clear that an analysis is required.

The dispute centers on the language and interpretation of the endorsement clause. In its motion to dismiss, West Bend asserts that Treo seeks coverage that is "only available *if* a government authority orders a shut down or suspension of an insured's operations *due to* an outbreak of a communicable disease … at the insured premises …" (Doc.17)(Emphasis added).

Although West Bend only mentioned a two-step analysis during oral argument, a reading of their motion focuses on the following three questions (Doc. 17). First, was the Treo shutdown ordered by a governmental authority? Second, if so, was the shutdown due to an outbreak of a communicable disease? And third, was the shutdown at the insured's premises? Consequently, this Court will go through those three questions to determine if the conditions were met for the Communicable Disease endorsement. Notwithstanding the foregoing, even if the three questions are not in the affirmative, the court can look at the language of

the endorsement as a whole in order to determine if there is an ambiguity in the endorsement.

### 1. Was Treo Shutdown by a Governmental Order?

Yes, there is no doubt that there was a government ordered shutdown. On March 9, 2020, Illinois Governor J.B. Pritzker, in executive order 2020-19, issued his first gubernatorial disaster declaration in response to the outbreak of COVID-19, finding all counties in the State of Illinois as a disaster area[6] (Doc. 1-5). On March 11, 2020, the World Health Organization ("WHO") declared the novel coronavirus (COVID-19) outbreak a global pandemic.[7] On March 13, 2020, the president of the United States, Donald Trump, declared a nationwide emergency covering all states and territories, including Illinois.  On March 20, 2020 in executive order 2020-10, Governor Pritzker, entered his stay at home/shelter in place order, which also ordered all non-essential businesses in Illinois, including Treo, to cease all activities other than working from home. While this order was originally set to expire on April 7, 2020, it was extended via other executive orders until executive order 2020-38, which allowed all non-essential businesses, including Treo, to open on May 29, 2020 with restrictions.

It is clear that the government acted swiftly and not piecemeal in issuing state-wide closures. When the closures began in March 2020, COVID-19 was still a novel coronavirus and was presumed to be present throughout the state. The virus

---

[6] Numerous Executive Orders were entered by Governor JB Pritzker during the course of the Pandemic, several of which still remain in effect.  For a more detailed viewing, visit https://www.2illinois/gov/Pages/Executive-Orders.
[7] At a COVID-19 media briefing, the Director-General of WHO made the assessment on March 11, 2020 that COVID-19 could be characterized as a pandemic.

was virulent and pervasive and no person or area was immune from infection. It was ubiquitous and the government acted proactively in shutting down businesses in an effort to stop the rampant spreading of this contagious disease that had no boundaries in order to protect the public.

### 2. Was the Shutdown "due to" an Outbreak of a Communicable Disease?

This question can be broken into multiple parts. First, is COVID-19 a communicable disease? Second, was there an outbreak of COVID-19? Third, if there was an outbreak, did it cause the government shut down? All three subsections can be answered in the affirmative.

There does not seem to be a dispute among the parties that COVID-19 counts as a "communicable" disease under the policy's definition. According to Merriam-Webster's Dictionary, a communicable disease is an infectious disease that is transmissible by contact with infected individuals or their bodily discharges or fluids (such as respiratory droplets, blood, or semen), by contact with contaminated surfaces or objects, by ingestion of contaminated food or water, or by direct or indirect contact with disease vectors (such as mosquitos, fleas, or mice).[8] Indeed, WHO described COVID-19 as an infectious disease caused by the newly discovered coronavirus disease.

There also does not seem to be a question that there was an outbreak of COVID-19. Our trusted dictionary has multiple definitions for outbreak, including "a sudden rise in the incidence of a disease". When WHO declared a pandemic on

---

[8] See https://www.merriam-webster.com/dictionary/communicabledisease

March 11, 2020, it was done because the Director-General was "deeply concerned both by the alarming levels of spread and severity".[9]

The final subsection is also dispositive. In the State of Illinois, there is no question that Governor Pritzker's shutdown orders were in response to the outbreak of COVID-19 throughout all areas and regions of the state.

### 3. Was the Shutdown at Treo's Premises?

Again, there is no question of an outbreak of a communicable disease that resulted in a government ordered shutdown of all-non-essential businesses in the entire State of Illinois. The issue focuses on the insured's premises and whether it was shutdown due to an outbreak *at the insured premises*. At hearing, West Bend argued for strict interpretation while Treo argued for a broader interpretation.

West Bend contends the endorsement fails because, although Treo was shut down due to a governmental order issued as a result of the COVID-19 pandemic, Treo was not and cannot prove it was shut down "due to" the communicable disease being on the premises. Treo argues that because plaintiff's premises were included geographically in the government shutdown orders, coverage was triggered under the Communicable Disease endorsement (Doc. 19). Moreover, they contend the endorsement is meant to protect small businesses such as theirs against government infringement (*Id.*). The government did not create any process through which Treo could prove it was virus free, was not a possible vector or was employing safety measures sufficient to justify continuous operation of its services.

---

[9] See https://www.who.int/emergencies/diseases/novel-coronavirus-2019

How can West Bend or anyone else be so certain that COVID-19 was not on Treo's premises?

In light of the foregoing, at this time and without the benefit of a developed evidentiary record and briefing on the issue, the Court is not prepared to determine whether the endorsement is ambiguous or contains ambiguous conditions. For now, Treo has sufficiently pled a cause of action against West Bend and has plausibly alleged that they are entitled to coverage. Any disputed issues may be better suited for disposition on a motion for summary judgment, after the case has been more fully developed.

## CONCLUSION

For the above-stated reasons, the Court concludes that Treo Salon, Inc. has stated a claim sufficient to survive the instant motion to dismiss. As such, the Motion to Dismiss pursuant to Rule 12(b)(6) filed by West Bend Mutual Insurance Company is **DENIED**. West Bend is further ordered to answer the Complaint on or before June 10, 2021.

**IT IS SO ORDERED.**

**DATED: May 10, 2021**

/s/ Stephen P. McGlynn
STEPHEN P. McGLYNN
U.S. District Judge